THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES HAMMER, On Behalf of Himself and All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>FRONTIER FINANCIAL CORPORATION, PATRICK M. FAHEY, JOHN J. DICKSON, MICHAEL J. CLEMENTZ, CAROL E. WHEELER, and ROB ROBINSON,<br><br>               Defendants. | Case No. 10-0643-JCC<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC]

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

JURISDICTION AND VENUE ............................................................................................... 3

PARTIES ................................................................................................................................. 4

CLASS ACTION ALLEGATIONS ......................................................................................... 7

OVERVIEW OF THE FRAUD ............................................................................................... 9

DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS ................... 15

    A.      Second Quarter 2008 ................................................................................... 16

    B.      Third Quarter 2008 ..................................................................................... 20

    C.      2008 Year-End Results ............................................................................... 23

DEFENDANTS' FAILURE TO COMPLY WITH GAAP AND SEC RULES ....................... 27

LOSS CAUSATION/ECONOMIC LOSS .............................................................................. 37

BASIS FOR ALLEGATIONS ............................................................................................... 38

COUNT I:  For Violations of §10(b) of the 1934 Act and SEC Rule 10b-5 .............................. 38

COUNT II:  For Violation of §20(a) of the 1934 Act

PRAYER FOR RELIEF ......................................................................................................... 40

JURY DEMAND .................................................................................................................... 40

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC]

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1    Lead Plaintiff James Hammer ("Lead Plaintiff"), through his attorneys, brings this

2    action on behalf of himself and all others similarly situated, and alleges as follows:

3                                    **INTRODUCTION**

4    1.    Frontier Financial Corporation ("Frontier" or the "Company") was a publicly-

5    traded holding company that, during the Class Period, had stock that traded for the equivalent

6    of $186.00 per share.[1]  That stock is now worthless due to the Defendants' misconduct.

7    Unbeknownst to Class members when they purchased Frontier stock on the open market, the

8    Company was teetering on the brink of failure due to the Defendants' scheme to misrepresent

9    the its true financial condition.  From July 22, 2008 through March 25, 2009 (the "Class

10   Period"), the Defendants made material misstatements, and failed to disclose material

11   information, regarding Frontier's financial results.  Among other things, they caused Frontier

12   to improperly account for its loan loss reserves and misrepresented the sufficiency of Frontier's

13   capital.  Frontier's failure to record adequate reserves for risky and impaired real estate and

14   commercial loans and to maintain sufficient capital allowed Defendants to falsely overstate the

15   Company's assets and net income.

16   2.    The Defendants repeatedly represented to investors that Frontier was in

17   compliance with banking regulatory requirements.  However, no later than August 8, 2008, the

18   Federal Deposit Insurance Corporation ("FDIC") and State of Washington Department of

19   Financial Institutions ("DFI") informed Defendants that Frontier's operating subsidiary (the

20   "Bank") had inadequate capital and reserves, particularly in light of the Bank's large

21   concentration of real estate loans.  The Defendants did not disclose this material fact to

22   investors during the Class Period.  Ultimately, on April 30, 2010, the DFI closed the Bank.

23   Frontier has told shareholders to "contact their tax preparer about claiming a loss or worthless

24   stock deduction for their investment" in Frontier stock.

25

26

27   _____

[1]   All stock prices and numbers of shares referenced herein are adjusted to reflect a 1-for10
28   reverse stock split that occurred after the Class Period.

CONSOLIDATED CLASS ACTION COMPLAINT          Gold Bennett Cera & Sidener LLP
[CASE NO. 10-0643-JCC] - 1                    595 Market Street, Suite 2300
                                              San Francisco, CA 94105
#123074                                       Tel: (415) 777-2230  Fax: (415) 777-5189

3.      The Bank had dozens of branches in Washington and Oregon.  Historically, it focused on loans related to real estate, which included loans for construction, land development, completed lots, and residential single family homes.  Defendants participated in a scheme to defraud investors by concealing the Bank's unsafe lending practices and making false statements regarding, *inter alia*: (i) Frontier's lending and credit risk practices; (ii) the quality of its loan portfolio; (iii) Frontier's financial disclosures, including revenues, earnings, assets, capital position, and overall financial condition, as well as the accounting for its Allowance for Loan and Lease Losses ("ALLL"); (iv) compliance with regulatory requirements and guidance; and (v) the impact of the real estate and credit crises on Frontier.

4.      Frontier reported false and misleading financial results for Q2 2008 through the 2008 fiscal year by failing to properly account for loan loss reserves.  Loan loss reserves are reflected in the balance sheet (as an asset) and the income statement (as a direct reduction of pre-tax earnings).  Thus, by under-reserving for loan losses, the Defendants were able to overstate Frontier's assets and net income.  Based on the Bank's stake in risky and impaired real estate loans, the Company should have increased the ALLL and loan loss provision. Frontier's demise was caused by its reckless lending practices, failure to maintain adequate capital, and failure to record adequate loan losses.  Ultimately, it was this risk that forced federal regulators to take over the Bank's operations.

5.      In July 2008, the FDIC and DFI conducted a joint examination of the Bank.  No later than August 8, 2008, Defendants were expressly told that the Bank was operating with inadequate capital.  This is confirmed by Confidential Witness No. 5 ("CW5"),[2] who was an internal auditor that reported directly to the Audit Committee of the Board of Directors.  CW5 attended a meeting that included the regulators, the entire Board of Directors (either in-person or by conference call), and all members of senior management, including each of the Individual Defendants.  CW5 reported that the meeting "did not go well for the company" and

---

[2]      References to "CW__" are to Confidential Witnesses interviewed in connection with Lead Plaintiff's investigation.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 2

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

that "one had to know that a C&D [cease and desist order] was going to be forthcoming."  The DFI and FDIC had identified numerous unsafe and unsound banking practices at the Bank, including:

     (a)    operating with management whose policies and practices were detrimental to the Bank and jeopardized the safety of deposits;

     (b)    operating with a Board of Directors that failed to provide adequate supervision over, and direction to, management of the Bank;

     (c)    operating with inadequate capital given the kind and quality of the Bank's assets;

     (d)    operating with an inadequate loan valuation reserve;

     (e)    operating with a large number of poor quality loans;

     (f)    engaging in unsatisfactory lending and collection practices;

     (g)    operating in a manner that produced low earnings;

     (h)    operating with inadequate provisions for liquidity.

6.    Defendants made no public disclosure of this information and, instead, assured investors that Frontier was adequately capitalized.  Defendants' concealment of these material facts misled investors and caused Frontier's shares to trade at artificially inflated levels during the Class Period.  Once the truth became known to investors, the stock purchased during the Class Period by Lead Plaintiff and the Class members lost virtually all value and was delisted from the NASDAQ stock market.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under and are brought pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 3

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b).  Much of the conduct complained of herein occurred within this District as Frontier maintained its corporate headquarters in Everett, Washington.

10.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

11.      Lead Plaintiff James Hammer purchased Frontier common stock during the Class Period as set forth in the certification attached hereto as Exhibit A and sustained damages as a result of the violations of law alleged herein.

12.      Defendant Frontier Financial Corporation ("Frontier" or the "Company") was an Everett, Washington-based corporation that was incorporated in 1983.  It was registered as a holding company under the Bank Holding Company Act of 1956 and operated through a subsidiary, Frontier Bank.  The Bank was an "insured bank" as defined in the Federal Deposit Insurance Act that engaged in general banking business in Washington and Oregon, with as many as 51 branches during the Class Period.  Historically, the Bank focused on real estate construction lending.  At December 31, 2008, real estate loans comprised 66.2% of the loan portfolio.  Total real estate commercial, construction, and land development loans totaled approximately $3.78 billion.

13.      Defendant John J. Dickson ("Dickson") was President and CEO of Frontier from the beginning of the Class Period until on or about December 8, 2008 when he became President of the Bank and charged with the ongoing operation of Frontier's core business.  During the Class Period, Dickson also served as Director for both Frontier and the Bank, having been appointed to the Boards in 2003.  During the Class Period, Dickson signed the following Frontier SEC filings: (i) Frontier's Form 10-Q for the second quarter of the fiscal year 2008, filed August 1, 2008; (ii) Frontier's Form 10-Q for the third quarter of the fiscal year 2008, filed October 31, 2008; and (iii) Frontier's Form 10-K for the year ended December

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 4

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

31, 2008, filed March 12, 2009.  Dickson also signed certifications pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1350, contained in the foregoing quarterly reports only, issued by Frontier during the Class Period, which attested to the adequacy of the Company's internal controls and accounting systems.

14.     Defendant Patrick M. Fahey ("Fahey") was, after December 8, 2008, Chief Executive Officer ("CEO") of Frontier and Chairman of the Board of Directors of Frontier and the Bank.  He had served as director for Frontier and the Bank since 2006.  While on the Frontier board, Mr. Fahey served on its audit committee until he became Chairman of the Board.  During the Class Period, Fahey signed Frontier's Form 10-K for the year ended December 31, 2008, filed March 12, 2009 and certifications pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1350, contained therein, which attested to the adequacy of the Company's internal controls and accounting systems.  Fahey previously served as Chairman of Regional Banking at Wells Fargo Bank.  Prior to that, Fahey was Founder, President and CEO of Pacific Northwest Bank for 16 years.

15.     Defendant Michael J. Clementz ("Clementz") was, after December 8, 2008, President of Frontier, CEO of the Bank, and Director of both Frontier and the Bank.  He served in those capacities until his retirement on December 31, 2009.  Clementz had previously served as President and CEO of Frontier for three years.  Clementz was first appointed to the Boards of Frontier and the Bank in 2000.  During the Class Period, Clementz signed Frontier's Form 10-K for the year ended December 31, 2008, filed March 12, 2009.

16.     Defendant Carol E. Wheeler ("Wheeler") was at all relevant times, Chief Financial Officer ("CFO"), Principal Accounting Officer and Secretary of Frontier.  During the Class Period, Wheeler signed the following Frontier SEC filings: (i) Frontier's Form 10-Q for the second quarter of the fiscal year 2008, filed August 1, 2008; (ii) Frontier's Form 10-Q for the third quarter of the fiscal year 2008, filed October 31, 2008; and (iii) Frontier's Form 10-K for the year ended December 31, 2008, filed March 12, 2009.  Wheeler also signed certifications pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1350, contained in the foregoing quarterly reports and Form 10-K issued by Frontier during

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 5

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

the Class Period, which attested to the adequacy of the Company's internal controls and accounting systems.  Wheeler was responsible during the Class Period for the oversight of Frontier's financial reporting and management.

17.     Defendant Rob Robinson ("Robinson") was at all relevant times, the Bank's Chief Credit Officer.

18.     During the Class Period, defendants, as senior executive officers and/or directors of Frontier, were privy to confidential and proprietary information concerning Frontier, its operations, finances, financial condition and present and future business prospects. Defendants also had access to material adverse non-public information concerning Frontier, as alleged below.  Because of their positions with Frontier, defendants had access to non-public information about the Company's business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith.  Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

19.     Defendants are liable as direct participants in the wrongs complained of herein. In addition, defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" of Frontier within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein.  Because of their positions of control, defendants were able to and did, directly or indirectly, control the conduct of Frontier's business.

20.     Defendants participated in the preparation of, and controlled and/or possessed the authority to control the content of, the Company's reports, releases and presentations to securities analysts and through them, to the investing public.  Defendants were provided with copies of the Company's reports and releases alleged herein to be misleading prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 6

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1    to be corrected.  Thus, defendants had the opportunity to commit the fraudulent acts alleged

2    herein.

3        21.    As senior executive officers and/or directors and as controlling persons of a

4    publicly traded company whose common stock was registered with the SEC pursuant to the

5    Exchange Act, and was traded on the NASDAQ National Market System and governed by the

6    federal securities laws, defendants had a duty to promptly disseminate accurate and truthful

7    information with respect to Frontier's financial condition and performance, growth, operations,

8    financial statements, business, products, markets, management, earnings and present and future

9    business prospects, and to correct any previously issued statements that had become materially

10   misleading or untrue, so that the market price of Frontier's common stock would be based

11   upon truthful and accurate information.  Defendants' misrepresentations and omissions during

12   the Class Period violated these specific requirements and obligations.

13       22.    Defendants are liable as participants in a fraudulent scheme and course of

14   conduct, which operated as a fraud or deceit on purchasers of Frontier's common stock, by

15   disseminating false and misleading statements and/or concealing material adverse facts.  The

16   scheme: (i) deceived the investing public regarding Frontier's business, operations,

17   management and the intrinsic value of Frontier's securities; and (ii) caused Lead Plaintiff and

18   members of the Class to purchase Frontier's common stock at artificially inflated prices.

19                          **CLASS ACTION ALLEGATIONS**

20       23.    Lead Plaintiff brings this action as a class action pursuant to Rule 23(a) and

21   23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all persons who

22   purchased or otherwise acquired Frontier common stock during the Class Period.  Excluded

23   from the Class are Defendants and their families, the officers and directors of the Company at

24   all relevant times, members of their immediate families and their legal representatives, heirs,

25   successors or assigns and any entity in which Defendants have or had a controlling interest.

26       24.    The members of the Class are so numerous that joinder of all members is

27   impracticable.  While the exact number of Class members can only be ascertained through

28   appropriate discovery, Lead Plaintiff believes that there are hundreds if not thousands of

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 7

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1   members in the proposed Class who are geographically dispersed.  Frontier had the equivalent

2   of 47,000,000 shares of stock outstanding during the Class Period.

3        25.    Common questions of law and fact exist as to all members of the Class and

4   predominate over any questions affecting only individual Class members.  Among the

5   questions of law and fact common to the Class are the following:

6              (a)    Whether the Defendants violated the federal securities laws through their

7                     acts and/or omissions as alleged herein;

8              (b)    Whether Defendants directly or indirectly participated in and pursued

9                     the fraudulent plan and scheme and common course of conduct as

10                    alleged herein;

11             (c)    Whether the filings, reports, documents, statements, and attestations

12                    made by Defendants during the Class Period omitted or misrepresented

13                    material facts about the business, operations, performance, and/or

14                    financial condition of Frontier;

15             (d)    Whether the public statements issued by Frontier and the individually

16                    named Defendants, including Frontier's financial statements and filings

17                    with the SEC, contained material misrepresentations and/or omitted to

18                    state material facts;

19             (e)    Whether the Defendants acted knowingly or with reckless disregard for

20                    the truth in misrepresenting and omitting material facts in committing

21                    the wrongful acts complained of herein;

22             (f)    Whether the market price of Frontier common stock during the Class

23                    Period was manipulated or artificially inflated due to the

24                    misrepresentations and/or omissions complained of herein; and

25             (g)    Whether Lead Plaintiff and other members of the Class have sustained

26                    damages and, if so, the proper measure of such damages.

27       26.    Throughout the Class Period, and until May 12, 2010, Frontier common stock

28   met the requirements to be listed on the NASDAQ stock market, an efficient market, under the

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 8

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

symbol "FTBK."  As a regulated issuer, Frontier filed periodic public reports with the SEC that included Frontier's financial statements and other material information.  Many of false and misleading statements alleged herein were made in Frontier's SEC filings and related disclosures, and caused Frontier stock to trade at artificially inflated prices during the Class Period.  Frontier's management regularly met with, and provided information to, securities analysts, institutional investors, and other market professionals.

27.     Lead Plaintiff's claims are typical of the claims of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of the federal securities laws as alleged herein.  Lead Plaintiff and all members of the Class acquired Frontier stock during the Class Period and have sustained damages arising out of Defendants' wrongful conduct as alleged herein upon the full disclosure of the wrongdoing.

28.     Lead Plaintiff will zealously prosecute the claims, will fairly and adequately protect the interests of the members of the Class, and has retained counsel competent and experienced in securities litigation and class actions.  Lead Plaintiff does not have any interests antagonistic to or in conflict with the other members of the Class.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs complained of herein.  There will be no difficulty in the management of this action as a class action.

## OVERVIEW OF THE FRAUD

30.     Prior to and throughout the Class Period, the Defendants sought to mask the Bank's financial problems and failure to comply with regulatory standards.  In May or June of 2008, CW6 conducted an annual loan loss reserve audit.[3]  The initial loss number was decided

---

[3]    CW6 was a Senior Internal Auditor at the Bank from 2005 through the end of the Class Period.  CW6 reported to the Vice President, Internal Audit.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 9

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1  upon by Defendants Robinson, Dickson, and Wheeler, and then the numbers were confirmed

2  by Lewis Hendry, a financial analyst who reported to Robinson.  CW6 reviewed Hendry's

3  workpapers, confirmed the calculations, and checked how Hendry had analyzed the data in

4  support of the loan loss reserve.  CW6 saw that the loan loss reserve was based on annual

5  appraisals conducted before 2008.  Given the rapidly changing market conditions, the

6  appraisals were outdated and gave inflated valuations for the underlying properties.  Using the

7  outdated real estate valuations artificially diminished the losses on loans secured by the

8  properties, which made the loan loss reserve numbers generated in 2008 unreliable.

9       31.    CW11 also confirmed that Defendants Dickson, Fahey, Wheeler, and Robinson

10  were directly involved in determining the loss reserve and were members of the Asset Liability

11  Committee ("ALCO").[4]  According to CW11, ALCO met "late in the first week" of each

12  month to review the prior month's data, including the loan loss allowance or reserve, deposits,

13  expenses.  After each quarter, ALCO reviewed the income and balance sheet before the

14  preliminary financial results were publicly disclosed.

15       32.    In mid-June 2008, Frontier was informed that DFI and the FDIC were planning

16  an on-site examination to review the Bank's operations, according to CW2.  CW2 indicated

17  that, six weeks before the examination, the Bank's management was sent a letter regarding the

18  records the Bank was required to make available.[5]  CW1 confirmed that the on-site

19  examination did, in fact, occur from July 21, 2008 through August 8, 2008.[6]  Eleven examiners

20  were involved, led by an Examiner-in-Charge ("EIC").  The regulators interviewed the Bank's

21  CEO (defendant Dickson), President (defendant Clementz), CFO (defendant Wheeler), as well

22  as the Controller, Chief Credit Officer, loan officers, credit officers, and internal auditors.

23

24

25

---

26  [4]  CW11 was hired by the Bank in June 2007 and served as Senior Vice President, Operations.

27  [5]  CW2 is a DFI official with personal knowledge of the Frontier examination.

28  [6]  CW1 is an executive assistant in the Banking Division at DFI.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 10

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1    33.    CW8 was one of the Bank employees responsible for compiling the documents

2   and other information requested by the examiners.[7]  CW8 stated that, near the end of the

3   examination, "exit agendas" were shared by the examiners with management, including

4   defendants Dickson, Wheeler, Fahey, and Robinson, who had been told of the results of the

5   examination.[8]

6    34.    CW5, the internal auditor who reported to the Board's Audit Committee,

7   attended a meeting in early August 2008 at which the Defendants were told the findings of the

8   regulatory examination.  The meeting was attended by Frontier's entire Board of Directors, and

9   all members of senior management.  The regulators informed the Bank of certain "CAMELS"

10  ratings it had received.  CAMELS ratings are based on a scale of 1 to 5 (with 5 as the lowest

11  score) based on a Bank's Capital, Asset quality, Management, Earnings, Liquidity, and

12  Sensitivity to risk.  When the CAMELS ratings were presented at the meeting, it was apparent

13  to CW5 that a cease and desist order was forthcoming.[9]  Following this meeting, Defendants

14  clearly knew that the Bank was:

15      (a)    operating with management whose policies and practices were

16  detrimental to the Bank and jeopardized the safety of deposits;

17      (b)    operating with a Board of Directors that failed to provide adequate

18  supervision over, and direction to, management of the Bank;

19      (c)    operating with inadequate capital given the kind and quality of the

20  Bank's assets;

21      (d)    operating with an inadequate loan valuation reserve;

22      (e)    operating with a large number of poor quality loans;

23

24  [7]   CW8 was an Assistant Vice President, Audit Project Manager who worked at the Bank from
    2004 through April 2009.

25  [8]   CW10 who was a Fraud and Risk Manager hired in 2005.  In July 2008, her work required
26  interaction the Bank's loan group.  CW10 learned of the regulators' presence and was told by
    loan employees that "things don't look too good now for the bank" because the examiners were
27  investigating an issue previously unknown to them.

28  [9]   CW5 left Frontier in Q3 2009 because he "saw the hand writing on the wall for Frontier..."

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 11

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

(f)     engaging in unsatisfactory lending and collection practices;

(g)     operating in a manner that produced low earnings;

(h)     operating with inadequate provisions for liquidity.

35.     On December 8 or 9, 2008, CW9 was called to a meeting with defendants Dickson and Clementz and offered a new job as Credit Administrator.[10]  CW9 was told that Defendant Fahey had met with the FDIC, which demanded that the Bank replace its senior management based on the July 2008 examination.  Thus, defendants Fahey and Clementz moved from Board of Directors positions to operating positions.  Defendant Dickson resigned his positions as CEO and Chairman of Frontier and the Bank.  Defendant Fahey became Chairman and CEO of Frontier and Chairman of the Bank.  Defendant Clementz became President and CEO of the Bank.

36.     Then, one or two days before Christmas in 2008, defendant Fahey called CW12 into his office.  CW12 was the Executive Vice President, Cashier during the Class Period.  Defendant Fahey told CW12 to immediately obtain $100 million to $200 million in broker deposits.[11]  CW12 told Defendant Fahey that it could not be done until the following Monday at the earliest due to the holiday, which caused Fahey to become very agitated.  CW12 stated, "The clear sense that I got from Fahey as to his agitation and being upset and my inability to act immediately is that 'we need to do this before the regulators say we can't do it'."  The FDIC disfavors brokered deposits due to their volatility and the potential exposure they create for the FDIC.  CW12 added that Fahey "knew that the regulators would never allow him to go after these brokered funds if he asked because it would put the FDIC at risk – so Fahey was walking a very fine line – he did not care what it would cost the Bank as to the rates it would need to pay on these brokered deposits."  CW12 further explained that Fahey's request and actions were "a clear indication . . . that we scored very low on liquidity as we likely did on the other examination ratings.  The examiners looked closely at our brokered deposits and liquidity

---

[10]   CW9 was hired by the Bank in 1996 and was a Senior Branch Administrator from mid-2007 through December 2008.

[11]   CW12 worked at the Bank from 2001 to June 2009.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 12

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

during the July 2008 examination.  I was totally convinced in December 2008 as a result of this meeting and the management changes that had been introduced in early December 2008 that the bank was going to be C&D'ed [cease and desist] and that Fahey and Clementz who were now running the bank knew it clearly."

37.     The Company's sudden reliance on brokered deposits was confirmed by CW12. CW12 stated that, throughout the second half of 2008, "all of our correspondent banks were turning down our fed funds lines of credit . . . Our lead bank, Key Bank turned us away in November, as did Pacific Coast Bank and US Bank.  There was no other way now for us to go after funds other than brokered deposits.  So all in all I would say that in December 2008 there was a liquidity 'panic' at the top of the bank."  CW12 indicated that Defendant Fahey was concerned about a "run on the bank" and the resulting need to meet withdrawal requests because the Bank lacked liquidity and had a highly leveraged balance sheet.

38.     A formal Report of Examination ("ROE") by the FDI and FDIC was delivered to Frontier on December 29, 2008.  The Defendants did not publicly disclose the report or the issues raised by the regulators at that time.  Moreover, it is evident that Defendants knew of the regulators' findings long before the formal ROE was delivered.  Among other things, the ROE stated that Frontier was "operating with a large volume of poor quality loans" and "with an inadequate loan reserve."  Frontier later disclosed that it responded to these findings by retaining "an independent consultant to review and evaluate the loan portfolio **in the Fall of 2008,"** i.e., before the ROE was delivered.  (Emphasis added.)  The ROE also indicated that Frontier "was operating with management whose policies and practices [were] detrimental to the Bank and jeopardize[d] the safety of its deposits."  Frontier later disclosed that, in response to the regulators' concerns, the Company had engaged Fahey as Frontier's CEO and Chairman and Michael J. Clementz as President on **December 4, 2008**, i.e., before the ROE was delivered.

39.     Subsequent events further confirm the severity of the problems that were known to Defendants, but not disclosed to investors, during the Class Period.  On or about September 30, 2009, the Bank filed a quarterly Consolidated Report of Condition and Income (referred to

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 13

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1    as a "Call Report") with the Financial Institutions Examination Council. The Call Report was

2    updated on November 27, 2009. In response, the FDIC notified the Bank that it was

3    "significantly undercapitalized" and required that it provide a Capital Restoration Plan. The

4    FDIC rejected the plan submitted by the Bank. On January 11, 2010, the FDIC conducted a

5    limited scope investigation, which again resulted in the FDIC informing the Bank that it was

6    critically undercapitalized.

7         40.    In the Spring of 2010, it was clear that Defendants' were unable to restore the

8    Bank to a safe and sound condition. Thus, on March 16, 2010, the FDIC issued a Prompt

9    Corrective Action Directive to the Bank (attached hereto as Exhibit B), effectively seizing the

10   Bank. However, despite their knowledge of the problems identified by the regulators since

11   July or early August 2008, the first **public** disclosure of this information did not occur until

12   March 24, 2009. On that date, the Bank issued a press release disclosing a Cease and Desist

13   Order (attached hereto as Exhibit C). The Cease and Desist Order repeated the findings made

14   in the ROE and ordered the Bank to immediately:

- Have and retain a qualified management team.

- Strengthen the Board of Director's oversight including having the Board develop and implement a capital plan and a comprehensive policy for determining the adequacy of the allowance for loan and lease losses.

- Increase and maintain its capital levels.

- Reduce its risk exposure to assets classified as "substandard" or "doubtful."

- Refrain from extending any additional credit to borrower's whose loans have been charged-off or are classified as "loss" and are uncollected.

- Refrain from extending any additional credit to, or for the benefit of, any borrower who has a loan, or other extension of credit, classified in whole, or in part, as "doubtful" or "substandard" without collecting all past due interest.

- Revise and implement lending and collection policies.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 14

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

- • Revise its Concentration Policy which must limit and systematically reduce the number of commercial real estate and acquisition, development and construction loans.
- • Develop and adopt an overhead and profitability plan.

- • Revise and adopt a written liquidity and funds management policy and a liquidity and funds management policy to reduce the Bank's reliance on non-core funding sources.

- • Refrain from paying dividends without prior written consent of the FDIC and DFI.

- • Notify shareholders of the Consent Agreement.

- • Provide quarterly progress reports to the FDIC and DFI.

41. By the end of March 2009, it became impossible for the Defendants to continue hiding their scheme. On March 31, 2009. Frontier's independent auditor issued a "going concern" qualification as to the Company's financial statements. The auditor also determined that Frontier had deficient internal control over its financial reporting, and expressed an adverse opinion thereon. The DFI closed the Bank on April 30, 2010 and the FDIC was appointed as the receiver. On May 6, 2010, UnionBanCal Corporation reported that its wholly-owned subsidiary, Union Bank, N.A., had entered into a purchase and assumption agreement with the FDIC pursuant to which Union Bank, N.A., acquired certain assets and assumed certain liabilities of the Bank. The value of the Bank's assets was reduced from $2.79 billion to $1.65 billion – an astounding 40% devaluation compared to what Frontier publicly reported during the Class Period.

42. Trading of Frontier stock was halted on May 12, 2010 and, two weeks later, the Nasdaq announced that it would be delisted. Frontier has told investors that the stock, which had traded for as much as $186.00 per share during the Class Period, had become worthless.

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS**

43. Throughout the Class Period, Defendants made false and misleading statements to investors that failed to fully disclose the extent of the delinquent commercial real estate, construction, and land loans. In addition, the Defendants failed to adequately and timely

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 15

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1   record losses for impaired loans, causing Frontier's financial results and its Tier 1 capital ratio

2   to be materially misstated.  The Defendants misled the market as to the true financial condition

3   of Frontier and deprived investors of material information that was necessary to evaluate the

4   Company.

5   **A.     Second Quarter 2008**

6          44.    The Class Period begins on July 22, 2008.  On that date, Frontier issued a press

7   release with the Company's preliminary financial results for the second quarter 2008, which

8   ended March 31, 2008  The release included the following statements:

9              . . . For the three months ended June 30, 2008, net income totaled
               $2.1 million, a decrease of $16.1 million, or 88.6%, compared to
10             net income of $18.2 million for the three months ended June 30,
               2007.  For the three months ended June 30, 2008, the provision for
11             loan losses totaled $24.5 million, compared to $1.9 million for the
               three months ended June 30, 2007, an increase of $22.6 million.
12             On a diluted per share basis, second quarter 2008 net income was
               $0.04 per share, compared to $0.40 per share for the second quarter
13             2007.

14

15         45.    This statement was materially false and misleading at the time it was made.  The

16  joint FDIC/DFI investigation found that Frontier engaged in unsafe and unsound banking

17  practices had inadequate reserves for loan losses.  Had the Company accurately reserved for

18  loan losses, net income and earnings per share would have been reduced.

19         46.    Regarding Frontier's general financial condition, the release stated:

20             *Allowance for Loan Losses*

21             . . . "With total reserves for loans losses of $81.6 million,
               including the reserve for undisbursed, and tangible capital of over
22             $380 million, we have over $460 million to absorb any losses that
               may arise due to market uncertainties," said Rob Robinson, Chief
23             Credit Officer of Frontier Bank.

24

25             *Credit Quality*

26             At June 30, 2008, nonperforming assets were 2.9% of total assets,
               compared to 0.97% at March 31, 2008, 0.53% at December 31,
27             2007, and 0.31% at June 30, 2007. . . .

28

CONSOLIDATED CLASS ACTION COMPLAINT                    Gold Bennett Cera & Sidener LLP
[CASE NO. 10-0643-JCC] - 16                                          595 Market Street, Suite 2300
                                                                    San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

* * *

*Capital*

Management constantly monitors the level of capital, considering, among other things, our present and anticipated needs, current market conditions and other relevant factors, including regulatory requirements . . .

47.    The foregoing statements were materially misleading when issued.  The Defendants knew, or were reckless in not knowing, that Frontier was engaged in unsafe and unsound banking practices because the Bank was operating with: (1) an inadequate loan valuation reserve; (2) a large amount of poor quality loans; and (3) inadequate capital based on the kind and quality of assets held by the Bank.

48.    The Company held its second quarter 2008 analyst conference call on July 22, 2008.  The call was led by Defendants Dickson, Wheeler, and Robinson, as well as Lyle Ryan (President and Chief Banking Officer).  Defendant Dickson stated that:

- "Our capital ratios remain strong . . . ."

- "With the challenging housing market we feel good about that [total loan loss reserve of $81.6 million or 2.14% of total loans] loan loss reserve."

- "As we indicated in the press release, our leverage, our capital ratios remain very strong with leverage ratio at 9.69%, out Tier 1 capital ratio at 9.96% and our total risk-based capital at 11.22%."

- ". . . we feel very good about our capital and reserve position."

- "So as we stand today, we have no intent on raising additional capital."

- "I'd like to point out to the callers that we have a very experienced management team."

- ". . . we have three ex-bankers that are on our Board of Directors. . . .  Between those three we have over 150 years of bank experience to help guide us through these challenging times."

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 17

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

- "When we decide that a write off is proved at this moment in time that's generally because we are looking at saying that the probability of recovery on that is very low. If we chose to reserve and wait, it is because we believe that we have a good opportunity to recover a portion of that reserve, and maybe all of it."

49.     Robinson reinforced these representations by stating:

- ". . . we continue to take steps necessary to maintain a strong loan loss reserve."

- ". . . we believe that our reserves are substantial and provide adequate support for any losses that may arise as we work closely with our lender and our customers get through these very challenging times."

- "I think we are being pretty conservative when it comes to the specific category, which would be all non-accrual loans where you are doing a FAS 114 analysis. And in those cases, for the most part we are taking a 30% discount off the appraised value. So hopefully [we are] leaving ourselves plenty of leeway for further deterioration in the market."

50.     The statements made during the conference call were false and misleading at the time they were made. They misrepresented and omitted to state that during this fiscal quarter Frontier engaged in the following unsafe and unsound banking practices indentified in the July 2008 ROE: (1) operating with inadequate capital in relation to the kind and quality of assets held by the Bank; (2) operating with an inadequate loan valuation reserve; (3) operating with a large volume of poor quality loans; and (4) operating with inadequate provisions for liquidity.

51.     On August 1, 2008, Frontier filed a Form 10-Q stating the Company's financial results for the second quarter of 2008. The Form 10-Q, signed by Defendants Dickson and Wheeler, stated: "In the opinion of management, the consolidated financial statements reflect all adjustments necessary for a fair presentation of the financial condition and results of operation for the interim periods presented." It also stated that "[W]e have emphasized commercial real estate and construction and land development related lending. . . . While we

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 18

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

have significant balances within this lending category, we believe that our lending policies and underwriting standards are sufficient to minimize risk, despite slowing in the Puget Sound region real estate market that began in the third quarter of 2007." The statement also addressed the capitalization of the bank. "It is our policy that capital be maintained above the point where, for regulatory purposes, it would continue to be classified as 'well capitalized.'"

52. The representations set forth in the paragraph above were false and misleading at the time they were made. The Defendants knew, or recklessly disregarded, undisclosed information indicating that Frontier engaged in the unsafe and unsound banking practices set forth in the July 2008 ROE: (1) operating with inadequate capital in relation to the kind and quality of assets held by the Bank; (2) operating with an inadequate loan valuation reserve; (3) operating with a large volume of poor quality loans; and (4) operating with inadequate provisions for liquidity.

53. The 2Q 2008 Form 10-Q also included certifications signed by Defendants Dickson and Wheeler pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley Certifications"). They verified, *inter alia*, that: (i) the filing did not contain any false or misleading statements or omissions; (ii) the financial statements accurately reflected the Company's financial condition; and (iii) the Company had adequate disclosure and internal controls.

54. As Frontier's Form 10-Q filed August 1, 2008 contained several false and misleading misstatements, Dickson's and Wheeler's certification were materially false when made.

55. On September 18, 2008, Frontier filed a Form 8-K with the SEC, which stated in part:

> Item 2.06  Material Impairments.
>
> Frontier and its subsidiary, Frontier Bank, anticipate that they will continue to exceed all capital levels necessary to remain "well capitalized" under regulatory guidelines at quarter-end.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 19

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

56.     The foregoing statement was false when made.  The ROE confirms that, at the time this representation was made, Frontier was operating with inadequate capital in relation to the kind and quality of assets held by the Bank.

**B.     Third Quarter 2008**

57.     On October 23, 2008, Frontier reported its third quarter 2008 financial results. In a press release, the Company reported a net loss of $17.8 million, or ($0.38) per share.  In addition:

> John J. Dickson, President and CEO of Frontier Financial Corporation, said, "The uncertainties in the economy and the housing market in the Pacific Northwest have created some challenging times for Frontier Bank and our borrowers.  Although the economy in our area remains in better shape than other parts of the country, **we continued to build our reserves for future loan losses** based on this uncertainty, resulting in a total reserve (including reserves for undisbursed loans) of $109.5 million or 2.86% of total loans.  **At the end of September, Frontier remained well capitalized** for regulatory capital purposes and **maintained strong liquidity**.  In addition, we were pleased with our strong growth in deposits and noninterest income."  (Emphasis added).

58.     Frontier reassured investors that it was improving the quality of its loans and maintaining its well capitalized status:

> *Loans*
>
> . . . Lyle E. Ryan, President of Frontier Bank stated, "The reduction in loan originations and loan growth in the third quarter reflects our strategy of reducing our exposure to residential construction and limit our loan growth in order to preserve capital. We will continue to evaluate balance sheet strategies in the fourth quarter in order to maintain our well capitalized status."
>
> *Allowance for Loan Losses*
>
> The total allowance for loan losses was $106.6 million, or 2.78%, of total loans outstanding at September 30, 2008, compared to $54.0 million, or 1.49%, at December 31, 2007, and $45.1 million, or 1.36%, at September 30, 2007.  The allowance for loan losses, including the reclassified allocation for undisbursed loans of $2.8

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 20

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

million, would amount to a total allowance of $109.5 million, or 2.86%, of total loans outstanding as of September 30, 2008. For the quarter ended September 30, 2008, net loan charge-offs were $14.3 million, or 0.37%, of average quarterly loans. This compares to net loan charge-offs of $594 thousand, or 0.02%, of average loans for the quarter ended December 31, 2007, and $326 thousand, or 0.01%, of average loans for the quarter ended September 30, 2007.

*Credit Quality*

At September 30, 2008, nonperforming assets were 4.92% of total assets, compared to 2.97% at June 30, 2008, 0.53% at December 31, 2007, and 0.35% at September 30, 2007. Nonaccruing loans were $205.2 million at September 30, 2008, up from $119.9 million at June 30, 2008, $20.9 million at December 31, 2007, and $11.3 million at September 30, 2007.

* * *

*Liquidity*

. . . Management has the ability to access many sources of liquidity, such as the sale of available for sale securities, additional borrowings from the FHLB, and borrowings from the Federal Reserves Bank, wholesale deposits or additional borrowings at correspondent banks. . . .

59. The representations made regarding the third quarter 2008 results were materially false and misleading when made. The Defendants knew, or were reckless in not knowing, that Frontier engaged in unsafe and unsound banking practices identified in the July 2008 ROE, including but not limited to: (1) operating with inadequate capital in relation to the kind and quality of assets held by the Bank; (2) operating with a an adequate loan valuation reserve; and (3) operating with a large volume of poor quality loans; and (4) operating with inadequate provisions for liquidity. Moreover, the Bank was losing access to overnight credit from other banks, which required the Bank to start depending on brokered deposits.

60. In addition, the Company made false and misleading statements during the Company's third quarter 2008 analyst conference call held on October 23, 2008. The call was lead by Defendants Dickson, Wheeler, and Robinson. When addressing residential lot loan

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 21

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

non-performing assets, Robinson stated that "we've either written down these NPAs to current market or have appropriately funded our reserve to cover these loans."  He also reassured investors that "[o]n our allowance for loan losses,  . . . , we continue to take steps necessary to maintain a very strong and robust loan reserve."  He further stated, "we believe our reserve is substantial and provides adequate support for losses that may arise as our management team works through these challenging times."

61.     The above emphasized statements regarding the third quarter 2008 results were materially false and misleading at the time they were made.  The Defendants knew, or were reckless in not knowing, that Frontier engaged in unsafe and unsound banking practices identified in the July 2008 ROE, including but not limited to: (1) operating with inadequate capital in relation to the kind and quality of assets held by the Bank; (2) operating with a an adequate loan valuation reserve; and (3) operating with a large volume of poor quality loans.

62.     Defendant Dickson stated that the Bank was "in the well-capitalized status for regulatory capital purposes."  He also mentioned that: (1) Frontier recently "had a discussion with the FDIC" related to Frontier's leveraging strategy; (2) that they had completed their recent regulatory exam that quarter; (3) that they were informed the day before that the FDIC was not going to accept their internal leveraging strategy as regulatory capital"; (4) "we're looking and saying we do need capital"; and (5) "we are still well capitalized for regulatory capital purposes and we are in a very good liquidity position."  These statements were made without disclosing that the FDIC/DFI had concluded their examination of Frontier, had found material deficiencies in its capital and loan loss reserves, and had determined to issue a Cease and Desist Order against Frontier.  By omitting this critical information, the Defendants misled investors regarding the joint examination including that Frontier was operating with inadequate capital in relation to the kind and quality of assets held by the Bank.

63.     The foregoing statements from the Company's third quarter 2008 conference call also misrepresented the adequacy of capital in relation to the loans held as was confirmed by the July ROE 2008, the subsequent March 2009 Cease and Desist Order and the March 2010 Supervisory Prompt Corrective Action Directive.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 22

#123074

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

64.     On August 1, 2008, Frontier filed a Form 10-Q with the Company's financial results for third quarter 2008.  The Form 10-Q, signed by Defendants Dickson and Wheeler, stated that the financial statements included therein provided a "fair presentation" of the Company's financial condition.  Among other things, the financial statements represented: "It is our policy that capital be maintained above the point where, for regulatory purposes, it would continue to be classified as 'well capitalized.'  As of June 30, 2008, we are in compliance with that policy."  It reiterated this point twice:

- "At September 20, 2008, we remain 'well capitalized' based on the ratios established under regulatory guidelines."

- "We remain 'well capitalized' at September 30, 2008, based on our financial statements prepared in accordance with generally accepted accounting principles and the general percentages in the regulatory guidelines."

65.     The representation that Frontier was in compliance with their capitalization policy was misleading as it omitted the fact that the July 2008 ROE found that Frontier was operating with inadequate capital in relation to the kind and quality of assets held by the Bank.

66.     The Form 10-Q also included Sarbanes-Oxley Certifications signed by Defendants Dickson and Wheeler.  They verified, *inter alia*, that: (i) the filing did not contain any false or misleading statements or omissions; (ii) the financial statements accurately reflected the Company's financial condition; and (iii) the Company had adequate disclosure and internal controls.  As Frontier's Form 10-Q filed August 1, 2008 contained several misstatements, Dickson's and Wheeler's certifications were materially false when made.

**C.     2008 Year-End Results**

67.     On January 29, 2009, Frontier issued a press release announcing its financial results for the fourth quarter of 2008 and the fiscal year ended December 31, 2008.  The release stated that, in Q4 2008, the Company had a net loss of $89.5 million or ($1.90) per share.  For FY 2008, the Company reported a net loss of $89.7 million or ($1.91) per share.  The press release further announced that:

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 23

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

. . . **Management continues to recognize loan quality deteriorating on a timely basis** and aggressively address work out strategies. . . .

Patrick M. Fahey, Chairmen and CEO of Frontier Financial Corporation said, "The Board of Directors, in responding to these challenging and unprecedented times, has taken a number of corrective actions. The leadership of the Corporation was restructured to enhance the effort to rebalance the Bank to a portfolio with a much smaller concentration in real estate lending and an increase in commercial and industrial business and consumer loans."

In the third quarter, we announced strategies to improve asset quality, preserve capital, reduce expenses and grow core deposits. . . . At December 31, 2008, nonperforming assets totaled $446.0 million, or 10.9% of total assets. This compares to nonperforming assets of $208.9 million, or 4.9% of total assets, at September 30, 2008, and $21.3 million, or 0.53% of total assets, at December 31, 2007.

\* \* \*

**Capital**

Management constantly monitors the level of capital, considering, among other things, our present and anticipated needs, current market conditions and other relevant factors, which may necessitate changes in the level of capital. . . .

\* \* \*

**Allowance for Loan Losses**

The total allowance for loan losses was $112.6 million, or 2.98%, of total loans outstanding at December 31, 2008, compared to $106.6 million, or 2.78%, at September 30, 2008, and $54.0 million, or 1.49%, at December 31, 2007. . . .

For the year ended December 31, 2008, the provision for loan losses increased $108.6 million, to $120.0 million, compared to $11.4 million for the year ended December 31, 2007. Net charge-offs increased $62.1 million, to $63.0 million in 2008, compared to $920 thousand in 2007.

Net charge-offs totaled $39.2 million, or 1.02% of average quarterly loans, for the quarter ended December 31, 2008. This

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 24

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1
2
3
4
5
6
7
8
9

compares to net charge-offs of $14.3 million, or 0.37%, and $594 thousand, or 0.02%, for the quarters ended September 30, 2008, and December 31, 2007, respectively.

\* \* \*

**Liquidity**

We continue to closely monitor and manage our liquidity position understanding that this is of critical importance in today's tight market. . . . Management has the ability to access additional sources of liquidity, such as the sale of available for sale securities and additional borrowings from the FHLB. . . . (Emphasis added.)

10
11
12
13
14

68.     These statements were false and misleading because the ROE found that Frontier was engaged in the following unsafe and unsound banking practices identified in the ROE: (1) operating with inadequate capital in relation to the kind and quality of assets held by the Bank; (2) operating with an inadequate loan valuation reserve; (3) operating with a large volume of poor quality loans; and (4) operating with inadequate provisions for liquidity.

15
16
17
18
19
20
21

69.     In addition, several false and misleading statements were made during the Company's analyst call on January 29, 2009.  The call was led by Defendants Dickson, Wheeler, and Robinson.  Defendant Dickson stated: "Another positive . . . Our reserve for loan losses exceeds 3% of total loans.  Our liquidity exceeded 28% at the end of the year, and **that's a strong liquidity ratio** . . ."  Robinson further represented that Frontier's "current reserves . . . are appropriate . . . ." and that "we believe our reserve is substantial and provides adequate support for losses that may arise . . ."

22
23
24
25
26
27
28

70.     During the conference call an analyst asked, "what is the capital range that would make you more comfortable, given what you're seeing in the portfolio?"  Defendant Fahey responded that, "with what we're looking at right now, we think it's a reasonable level; none of the folks that we've talked to disagree."  With regard to the Company's capital needs, another analyst specifically asked: "What are the regulators telling you to do?  What's plan B?"  Fahey responded:

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 25

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

I'm not going to put out a figure but I will tell you we don't think we need that much in equity.  The regulators, I think I have had over my career, an excellent relationship with the regulators.  We're communicating with them; they're communicating with us.  **I can't tell you what there actions are going to be.**  They are obviously very skittish as everybody is about what is going on in banking.  I can tell you that, given what we now know, while I can't assure you that we would not on an ongoing basis without capital, drop below well capitalized and possibly into the adequately capitalized, which a number of banks have.  What I can say from what **we know is that we can resolve this problem and continue to move forward** . . .

. . . I can tell you that **we are not ignoring the regulators.**  We are in communication with them and I will say that my impression, I can't speak for them, is **they have appreciated if not applauded the steps that the company has taken thus far and they understand our plan and I haven't heard anything negative from them about it.** . . . (Emphasis added.)

71.    The statements were false and misleading because the July 2008 ROE found that Frontier was (1) operating with inadequate capital in relation to the kind and quality of assets held by the bank; and (2) operating with an inadequate loan reserve.  Moreover, on December 29, 2008, Frontier received a copy of the final ROE as of June 30, 2008.

72.    On March 12, 2009, Frontier filed its Annual Report on Form 10-K for fiscal year 2008.  The Form 10-K, signed by Defendants Wheeler and Fahey, stated that:

- "We are regularly reviewed or audited by the Federal Reserve, the Federal Deposit Insurance Corporation ("FDIC") and the Washington Department of Financial Institutions, Division of Banks ("DFI") during which examinations such agencies assess our compliance with applicable law and regulations."

- "We believe that our loan portfolio has been subject to rigorous examination by banking regulators and our own credit review function that we are taking appropriate precautions to address the risks associated with our concentration in commercial real estate lending."

- "As of December 31, 2008, management believe[d] that we have sufficient capital resources and liquidity to be able to continue our normal business operations."

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 26

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

73.     Additionally, the Form 10-K stated that Frontier had adequate disclosure controls and procedures:

> Management, including the Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures as of December 31, 2008.  Based on this evaluation, the Chief Executive Officer and the Chief Financial Officer each concluded that as of December 31, 2008, **we maintained effective disclosure controls and procedures** in all material respects, including those to ensure that information required to be disclosed in reports filed or submitted with the SEC is . . . accumulated and communicated to management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate **to allow for timely decisions regarding required disclosure**.  (Emphasis added.)

74.     These statements were materially misleading as they omitted the fact that, no later than August 8, 2008, the DFI and FDIC had informed the Board of Directors and senior management of significant problems that required disclosure to investors.  Frontier's failure to make timely disclosures to investors shows that the Company lacked effective disclosure controls and procedures.

75.     The Form 10-K included Sarbanes-Oxley Certifications signed by Defendants Dickson and Wheeler.  They verified, *inter alia*, that: (i) the filing did not contain any false or misleading statements or omissions; (ii) the financial statements accurately reflected the Company's financial condition; and (iii) the Company had adequate disclosure and internal controls.  As the 2008 Form 10-K contained several misstatements, Dickson's and Wheeler's certifications were materially false when made.

## DEFENDANTS' FAILURE TO COMPLY WITH GAAP AND SEC RULES

76.     To inflate the price of Frontier's stock, Defendants caused the Company to falsely report its results for fiscal second quarter of 2008 through fiscal year end of 2008 by failing to properly account for its loan losses reserves, which overstated the Company's assets and net income.  Specifically, Defendants failed to reserve for Frontier's risky and impaired construction and land loans.  Defendants failed to increase Frontier's ALLL and intentionally

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 27

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

manipulated Frontier's loan loss provision to inflate earnings.  Had defendants properly increased Frontier's reserves for credit and loan losses as GAAP and SEC rules required, Frontier would have been required to drastically reduce its net income and earnings per share. The failure to take adequate credit and loan loss reserves inflated Frontier's financial condition, and its capital position, each quarter.

77.     Frontier's Class Period financial results were included in a Form 10-K and Form 10-Qs, as well as news releases disseminated to the public, as described above. Defendants' SEC filings represented that the financial information presented therein was a fair statement of Frontier's financial results and that the results were prepared in accordance with GAAP when, in fact, they were not.

78.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practices at a particular time.  SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnote or other disclosure.  Regulation S-X requires that interim financial statements, such as quarterly financial statements, must also comply with GAAP, with the exception that interim financial statements need not include disclosures which would be duplicative of disclosures accompanying annual financial statements.  17 C.F.R. §210.10-01(a).

79.     Defendants' representations were false and misleading as to the financial information reported, as such financial information was not prepared in conformity with GAAP, nor was the financial information a "fair representation" of Frontier's financial condition and operations, causing the financial results to be presented in violation of GAAP and SEC rules.

80.     The two central accounting items related to defendants' fraudulent manipulation of Frontier's loan loss reserves during the Class Period were ALLL on the balance sheet (which reduces assets), and the corresponding loan loss provision, which is a direct reduction of pretax earnings on Frontier's income statement.  The accounting for these items is governed

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 28

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

by specific GAAP provisions and SEC rules.  Because there is a plethora of guidance on the subject, defendants were well informed of how to account for the ALLL and loan loss provision during the Class Period.  The rules that defendants violated are set forth below.

81.     Section 9.19 of the Audit and Accounting Guide for Depository and Lending Institutions provides that financial institutions are responsible for "[m]aintain]ing] adequate controls to ensure that ALLL is consistently determined in accordance with GAAP, stated policies and procedures, and relevant supervisory guidance."

82.     Section 9.04 of the same Accounting Guide for Depository and Lending Institutions also provides: "Management is responsible for estimating credit losses. . . . management must make careful judgments about collectability and estimates of losses. Management's judgments often depend on micro- and macro-economic factors; past, current, and anticipated events based on facts in evidence at the balance-sheet date; and realistic courses of action it expects to take."

83.     Under GAAP, a loss contingency is an existing condition, situation, or set of circumstances involving uncertainty as to possible loss.  *See* Statement of Financial Accounting Standards ("SFAS") No. 5, ¶1, *Accounting for Contingencies*.  The collectability of construction and land loans is an example of a loss contingency.  GAAP requires that an estimated loss from a loss contingency be accrued by a charge to income if both of the following conditions are met: "(a) [i]nformation available prior to issuance of the financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements[; and] (b) [t]he amount of loss can be reasonably estimated."  *See* SFAS No. 5, ¶8.

84.     Even if no accrual is made for a loss contingency because one or both of the above conditions of SFAS No. 5 are not met, or if an exposure to loss exists in excess of the amount accrued, Defendants were still required to disclose the contingency when there is at

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 29

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1   least a "reasonable possibility" that a loss or an additional loss may have been incurred.[12]

2   SFAS No. 5, ¶10.  The disclosure shall indicate the nature of the contingency and shall give an

3   estimate of the possible loss or range of loss or state that such an estimate cannot be made.  *See*

4   SFAS No. 5, ¶10.

5           85.     In assessing the collectability of a loan, a company will either evaluate the loan

6   on a separate basis under SFAS No. 114, *Accounting by Creditors for Impairment of a Loan*, or

7   will group the loan together into a risk pool with other loans having similar characteristics

8   under SFAS No. 5.  While SFAS No. 5 provides the basic guidance for recognition of

9   impairment losses for all contingencies, SFAS No. 114 provides guidance on measurement and

10  disclosure for loans that are individually identified for evaluation and deemed to be impaired.

11  A company will establish a Specific Valuation Allowance ("SVA") for impairments losses

12  related to specific loans and will establish a General Valuation Allowance ("GVA") for losses

13  related to a pool of loans.

14          86.     Furthermore, the SEC provides explicit guidance on the proper accounting for

15  loan losses that defendants were required to follow, but did not.  Staff Accounting Bulletin

16  ("SAB") No. 102 states in pertinent part:

17              It is critical that loan loss allowance methodologies incorporate
18              management's current judgments about the credit quality of the
                loan portfolio through a **disciplined and c**onsistently applied
19              process. . . . A registrant's loan loss allowance methodology
                generally should . . .[c]onsider all known relevant internal and
20              external factors that may affect loan collectibility [and] [b]e based
                on current and reliable data[.]
21

22          87.     SAB No. 102 also provides:

23              Factors that should be considered in developing loss measurements
24              includ[ing] . . . [l]evels of and trends in delinquencies and impaired
                loans [and] [e]ffects of any changes in risk selection and
25              underwriting standards, and other changes in lending policies,
                procedures, and practices [.]

26

27  _____

28  [12]   GAAP defines "reasonably possible" as "[t]he chance of the future event or events occurring
    is more than remote but less than likely."  SFAS No. 5, ¶3.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 30

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

88.   SAB No. 102 further states that:

For many entities engaged in lending activities, the allowance and provision for loan losses are significant elements of the financial statements.  Therefore, the staff believes it is appropriate for an entity's management to review, on a periodic basis, its methodology for determining its allowance for loan losses.

89.   In violation of GAAP and SEC rules, defendants failed to reserve for Frontier's risky and impaired commercial real estate term loans, and construction and land development loans, causing its assets and net income to be overstated.  Frontier's collapse was due in significant part to problems with Frontier's construction and land loans, which required large write-offs in impaired loans and dramatic increases in the Company's provision for loan losses.

90.   Frontier's concentration in construction and land loans carried additional risks due to the nature of the types of loans.  Construction lending is inherently more risky than financing finished buildings with established tenants.  If a residential construction project cannot be completed, the value of the project would be significantly less than the appraised value due to a lack of proper infrastructure or ongoing support.

91.   A bank is required by FDIC regulations to maintain adequate capital levels to ensure the bank can absorb a reasonable amount of losses, to promote public confidence and to protect depositors.  In determining if a bank's level of capital is adequate, it must not only meet regulatory requirements, but it must also be commensurate with the bank's risk profile.  Regulatory capital requirements set minimum standards for banks, which are designed for banks that do not present credit or other risks requiring additional capital.  A bank's compliance with the minimum standards does not automatically ensure the bank has maintained an adequate level of capital.  Banks that engage in higher-risk activities require capital well in excess of the minimum requirements, especially if the higher-risk activities are conducted at significant concentration levels.

92.   Defendants caused Frontier to maintain inadequate capital levels in violation of FDIC regulations.  As discussed above, defendants manipulated the Company's loan loss

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 31

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

reserves, causing Frontier to understate its ALLL.  The failure to take adequate credit and loan loss reserves inflated Frontier's financial position, including its capital position.

93.     In addition, defendants failed to maintain a proper level of capital that was commensurate with its risk profile.  During the Class Period, Frontier reportedly maintained capital levels above the minimum 10% level required by the FDIC for a bank to be categorized as well-capitalized.  Nonetheless, defendants failed to maintain capital levels suitable to the Bank's high-risk loan portfolios.

94.     During the Class Period, defendants violated GAAP and SEC rules by intentionally manipulating the Company's reserves and provision for loan losses to conceal loan impairment and by willfully disregarding known adverse facts and red flags.  Despite having concentrations in high-risk loans, defendants failed to properly account for Frontier's risky and impaired construction and land loans.  The failure to take adequate credit and loan loss reserves overstated the Company's assets and net income and ultimately led to the collapse of Frontier.

95.     Despite red flags indicating by late 2006 and early 2007 that the real estate market was softening, Frontier only belatedly increased its loan loss reserves in mid-2008, and then did so inadequately.

96.     The financial statements certified by defendants during the Class Period as alleged above were not in accordance with GAAP and SEC rules.  Section 302 of the Sarbanes-Oxley Act of 2002 and SEC Rules 13a-14(a) and 15d-14(a) of the Exchange Act required defendants Dickson, Fahey, and Wheeler to certify to the SEC and investors the fairness of the financial information in each quarterly and annual report.  Defendants were required to, and did, certify that the financial statements and other financial information included in the reports were fairly presented in all material respects.  Defendants also stated that the reports did not contain any untrue statement of material fact or omit to state a material fact.  In addition, defendants stated that Frontier had established and maintained disclosure controls and procedures sufficient to ensure that the financial and non-financial information

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 32

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1     required to be disclosed in SEC reports was recorded, processed, summarized and reported

2     within the specified time periods.

3          97.    Defendants knowingly certified misleading and inaccurate financial statements

4     that were not in accordance with GAAP and SEC rules.  In accordance with §906 of the

5     Sarbanes-Oxley Act of 2002 and 18 U.S.C. §1350, defendants were required to certify each

6     periodic report that includes financial statements.  Their signed certifications falsely stated

7     that: (i) the report fully complied with the requirements of §13(a) or §15(d) of the Exchange

8     Act; and (ii) the information contained in the report fairly presented, in all material respects,

9     the financial condition and results of operations of Frontier.

10         98.    On the dates alleged above, defendants signed and filed with the SEC

11    certifications under SEC Rules 13a-14(a)/15d-l4(a) of the Exchange Act and §906 of the

12    Sarbanes-Oxley Act of 2002 attesting to the accuracy and truthfulness of the corresponding

13    Forms 10-K and 10-Q for Frontier.  At the time defendants signed these certifications, they

14    knew or recklessly disregarded that they were false for the reasons alleged herein.

15         99.    The defendants caused Frontier to fail to disclose known trends and

16    uncertainties related to its construction and land loans in violation of SEC regulations.

17    Defendants caused Frontier to provide misleading disclosures concerning its lending and credit

18    risk practices and the quality of Frontier's loan portfolios.  Defendants further downplayed the

19    risks surrounding the Company's real-estate related assets by misrepresenting the risk

20    management practices in place at Frontier and by downplaying the overall impact the housing

21    and credit crisis was having on Frontier's business.  Defendants further caused Frontier to fail

22    to disclose known trends and uncertainties related to its capital adequacy.

23         100.   Under SEC Regulations, Item 7 of Form 10-K and Item 2 of Form 10-Q,

24    MD&A requires the issuer to furnish information required by Item 303 of Regulation S-K (17

25    C.F.R. §229.303).  In discussing results of operations, Item 303 of Regulation S-K requires the

26    registrant to:

27

28

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 33

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1

2

3

> Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.

4

> The instructions to paragraph 303(a) further state:

5

6

7

> The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results . . . .

8

9      101.    In addition, in its May 18, 1989 Interpretive Release No. 34 26831, the SEC has

10   indicated that registrants should employ the following two-step analysis in determining when a

11   known trend or uncertainty is required to be included in the MD&A disclosure pursuant to

12   Item 303 of Regulation S-K:

13

14

15

> A disclosure duty exists where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation.

16      102.    The MD&A requirements are intended to provide, in one section of a filing,

17   material historical and prospective textual disclosure enabling investors and other users to

18   assess the financial condition and results of operations of the registrant, with particular

19   emphasis on the registrant's prospects for the future.  As Concept Release on MD&A,

20   Securities Act of 1933, Release No. 33-6711, 1987 SEC LEXIS 2001, at *6-*7 (Apr. 21,

21   1987), states:

22

23

24

25

26

27

> The Commission has long recognized the need for a narrative explanation of the financial statements, because a numerical presentation and brief accompanying footnotes alone may be insufficient for an investor to judge the quality of earnings and the likelihood that past performance is indicative of future performance.  MD&A is intended to give the investor an opportunity to look at the company through the eyes of management by providing both a short and long-term analysis of the business of the company.

28

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 34

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

1   Section 229.303 (Item 303) MD&A states:

2   To the extent that the financial statements disclose material
3   increases in net sales or revenues, provide a narrative discussion of
    the extent to which such increases are attributable to increases in
4   prices or to increases in the volume or amount of goods or services
    being sold or to the introduction of new products or services.
5

6   And the instructions to paragraph 303(a) further state:

7   Where the consolidated financial statements reveal material
8   changes from year to year in one or more line items, the causes for
    the changes shall be described to the extent necessary to an
9   understanding of the registrant's businesses as a whole . . . .

10

11  103.    According to MD&A, Securities Act Release No. 6349 (Sept. 28, 1981):

12  It is the responsibility of management to identify and address those
13  key variables and other qualitative and quantitative factors which
    are peculiar to and necessary for an understanding and evaluation
14  of the individual company.

15

16  104.    Nonetheless, in violation of both GAAP and SEC rules, Frontier's fiscal second

17  quarter 2008 through year end 2008 Forms 10-K and 10-Q reports failed to disclose known

18  trends and uncertainties related to Frontier's operations.  Defendants caused Frontier to

19  misrepresent Frontier's risk management practices and the adequacy of the Company's capital

20  and further caused Frontier to minimize the Company's risk exposure associated with its high-

21  risk loan portfolios.  Even when Frontier began to acknowledge certain risks, defendants

22  continued to downplay them.

23  105.    Frontier failed to disclose known trends and uncertainties in violation of SEC

24  regulations by not providing full and adequate disclosures.  Frontier's failure provided

25  investors with a false and misleading depiction of the Company's operations.

26  106.    Throughout the Class Period, defendants were able to cause the Company to

27  issue materially false and misleading financial statements by means of circumventing and

28  failing to establish and maintain adequate internal accounting controls over financial reporting

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 35

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

relating to its accounting for its loan loss reserves.  Section 13(b)(2) of the Exchange Act states, in pertinent part, that every reporting company must:

> (A) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer;
>
> (B) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –
>
>                \* \* \*
>
> (ii) transactions are recorded as necessary . . . to permit preparation of financial statements in conformity with [GAAP].
>
> 15 U.S.C. §78m(b)(2)(A)-(B).

107.   These provisions require an issuer to employ and supervise reliable personnel, to maintain reasonable assurances that transactions are executed as authorized, to properly record transactions on an issuer's books and, at reasonable intervals, to compare accounting records with physical assets.

108.   Defendants caused Frontier to violate §13(b)(2)(A) of the Exchange Act by failing to maintain accurate records concerning its accounting for loan loss reserves.  Frontier's inaccurate and false records were not isolated or unique instances because they were improperly maintained for multiple reporting periods.  Accordingly, Frontier violated §13(b)(2)(A) of the Exchange Act.

109.   In addition, defendants caused Frontier to violate §13(b)(2)(B) of the Exchange Act by failing to implement procedures reasonably designed to prevent accounting irregularities.  Defendants failed to ensure that proper review and checks were in place to ensure that Frontier was recording and properly reporting its loan loss reserves.  In fact, despite knowing the true state of the Company's lack of adequate controls, defendants regularly issued quarterly financial statements throughout the Class Period without ever disclosing the deficiencies in Frontier's internal accounting controls and falsely asserted that its financial statements complied with GAAP.

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 36

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

110.    During the Class Period, defendants caused the Company to make representations that Frontier's internal disclosure and accounting controls were designed to be effective and detect and prevent fraud and had been tested and found to be effective.

111.    These representations were false, as Frontier's disclosure controls and procedures were not effective and the Company's financial statements were not fairly presented in accordance with GAAP.  During the Class Period, Frontier violated §13(b)(2)(A) of the Exchange Act by failing to maintain adequate internal controls in order to ensure that its financial statements were prepared in conformity with GAAP and that its public filings were accurate.

112.    Frontier's lack of adequate internal controls rendered the Company's Class Period financial reporting inherently unreliable and precluded the Company from preparing financial statements that complied with GAAP.  Nonetheless, throughout the Class Period, the Company regularly issued quarterly and annual financial statements without ever disclosing the existence of the significant and material deficiencies in its internal accounting controls and defendants falsely asserted that Frontier's financial statements complied with GAAP.

## LOSS CAUSATION/ECONOMIC LOSS

113.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Lead Plaintiff and the Class.  Throughout the Class Period, the market price of Frontier stock was inflated by Defendants' false and misleading statements and omissions of material facts.  As a result, Lead Plaintiff and the Class purchased Frontier securities at artificially inflated prices.  When the truth was revealed, the price of Frontier's securities declined in response to remove the artificial inflation, thereby causing substantial damage to Lead Plaintiff and the Class.

114.    Frontier had the equivalent of 47,000,000 shares of stock outstanding during the Class Period, which traded as high as $186.00 per share.  On March 24, 2009, Frontier announced that it had signed the Cease and Desist Order.  On March 23, 2009, prior to the announcement, the stock closed at $14.90 per share.  In response to the disclosure, the price of

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 37

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

Frontier stock declined in a statistically significant amount, net of market and industry factors, dropping to a closing price of $11.80 on March 25, 2009.

115.     The nearly 94% loss in value during the eight month Class Period was a direct consequence of the Defendants' wrongdoing.  It was foreseeable to Defendants that concealing the true extent of the Company's financial difficulties would artificially inflate the stock price.  It was also foreseeable to Defendants that revelation of their misconduct, by way of the Company's worsening financial condition, would cause a significant drop in Frontier's stock price as the inflation was corrected.  Accordingly, the conduct of the Company and the Individual Defendants proximately caused foreseeable damages to Lead Plaintiff and the Class.

## BASIS FOR ALLEGATIONS

116.     Lead Plaintiff has made the foregoing allegations based on personal knowledge as to his own acts and upon information and belief as to all other matters.  Such information and belief is based on the investigation undertaken by his counsel, which included, inter alia: interviews with numerous former employees of Frontier and other persons with knowledge of the events alleged herein; expert analysis; review of relevant filings made by Frontier with the Securities and Exchange Commission; review of guidance issued by the federal and State of Washington banking regulatory authorities; examination of GAAP; review of Frontier's and other relevant websites; review of Frontier's press releases; review of Orders and other information regarding Frontier available from the FDIC, DFI, and Federal Reserve Bank; review of reports issued by securities analysts regarding Frontier; review of transcripts of analyst conference calls held by Frontier; and review of news articles regarding Frontier.

## COUNT I

### For Violations of §10(b) of the 1934 Act and SEC Rule 10b-5
### Against All Defendants

117.     Lead Plaintiff incorporates all of the foregoing paragraphs by reference.

118.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 38

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1   make the statements made, in light of the circumstances under which they were made, not

2   misleading.

3          119.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

4                  (a)     employed devices, schemes, and artifices to defraud;

5                  (b)     made untrue statements of material facts or omitted to state material

6   facts necessary in order to make the statements made, in light of the circumstances under

7   which they were made, not misleading; or

8                  (c)     engaged in acts, practices and a course of business that operated as a

9   fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of

10  Frontier common stock during the Class Period.

11         120.    Lead Plaintiff and the Class have suffered damages in that, in reliance on the

12  integrity of the market, they paid artificially inflated prices for Frontier common stock.  Lead

13  Plaintiff and the Class would not have purchased Frontier common stock at the prices they

14  paid, or at all, if they had been aware that the market price had been artificially and falsely

15  inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against Frontier and the Individual Defendants

19         121.    Lead Plaintiff incorporates all of the foregoing paragraphs by reference.

20         122.    Defendants Dickson, Fahey, Clementz, and Wheeler acted as controlling

21  persons of Frontier within the meaning of §20(a) of the 1934 Act.  By reason of their positions

22  with the Company, and their ownership of Frontier stock, these defendants had the power and

23  authority to cause Frontier to engage in the wrongful conduct complained of herein.  Frontier

24  controlled each of the individual named defendants and all of its employees.  By reason of such

25  conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

26

27

28

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 39

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1

## **PRAYER FOR RELIEF**

2        WHEREFORE, Lead Plaintiff prays for judgment as follows:

3        A.        Declaring this action to be a proper class action pursuant to Fed.R.Civ.P. 23;

4        B.        Awarding Lead Plaintiff and the members of the Class damages, including

5   interest;

6        C.        Awarding Lead Plaintiff reasonable costs and attorneys' fees; and

7        D.        Awarding such equitable/injunctive or other relief as the Court may deem just

8   and proper.

9

## **JURY DEMAND**

10        Lead Plaintiff demands a trial by jury.

11   Dated:  October 15, 2010                    Respectfully submitted,

12                                                      GOLD BENNETT CERA & SIDENER LLP

13                                                      By: /s/Solomon B. Cera                     
14                                                      Solomon B. Cera
                                                        Thomas C. Bright
15                                                      595 Market Street, Suite 2300
                                                        San Francisco, California 94105
16                                                      Telephone: (415) 777-2230
                                                        Facsimile: (415) 777-5189
17

18                                                      *Attorneys for Lead Plaintiff*
                                                        TOUSLEY BRAIN STEPHENS PLLC
19                                                      Kim D. Stephens, P.S., WSBA #11984
                                                        Mary B. Reiten, WSBA #33623
20                                                      1700 Seventh Avenue, Suite 2200
                                                        Seattle, Washington 98101
21                                                      Telephone: 206.682.5600
                                                        Facsimile: 206.682.2992
22

23                                                      *Liaison Counsel*

24

25

26

27

28

CONSOLIDATED CLASS ACTION COMPLAINT
[CASE NO. 10-0643-JCC] - 40

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on October 15, 2010, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4   following:

5   **Karl Phillip Barth**
    karlb@hbsslaw.com, shelby@lmbllp.com, dawn@hbsslaw.com, shelbys@hbsslaw.com

6

7   **Steve W. Berman**
    steve@hbsslaw.com, heatherw@hbsslaw.com

8

9   **Juli E. Farris**
    jfarris@KellerRohrback.com, swhitemore@KellerRohrback.com,

10      kwesterlin@KellerRohrback.com

11  **Steven W Fogg**
    sfogg@corrcronin.com, hpowell@corrcronin.com, reception@corrcronin.com

12

13  **Elizabeth Ann Leland**
    bleland@kellerrohrback.com, dwilcher@kellerrohrback.com

14

15  **Dale MacDiarmid**
    dmacdiarmid@glancylaw.com

16

17  **Mary B Reiten**
    mreiten@tousley.com, edebowgarcia@tousley.com, efile@tousley.com, btaylor@tousley.com

18

19  **Lynn Lincoln Sarko**
    lsarko@kellerrohrback.com, cengle@kellerrohrback.com

20

21  **Kim D Stephens**
    kstephens@tousley.com, wcruz@tousley.com, cbonifaci@tousley.com

22                                           /s/ Solomon B. Cera

23                                            Solomon B. Cera

24

25

26

27

28

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 777-2230  Fax: (415) 777-5189

#123074