THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   JAMES HAMMER,                                  CASE NO. C10-643 JCC

10                          Plaintiff,             ORDER

11                  v.

12   FRONTIER FINANCIAL
     CORPORATION, et al.,
13
                            Defendants.
14

15          This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 85),

16   Plaintiff's response (Dkt. No. 94), and Defendants' reply (Dkt. No. 98). Having thoroughly

17   considered the parties' briefing and the relevant record, the Court finds oral argument

18   unnecessary and hereby GRANTS the motion for the reasons explained herein.

19   I.     BACKGROUND

20          The facts of this case were discussed in the Court's previous order (Dkt. No. 68) and need

21   not be repeated at length here. In brief, the case concerns public statements made by Defendants

22   during the period leading up to the collapse of Frontier Financial Corporation ("Frontier"). On a

23   motion to dismiss, the allegations in the complaint are taken to be true. *Al-Kidd v. Ashcroft*, 580

24   F.3d 949, 956 (9th Cir. 2009). On October 15, 2010, Plaintiff filed an Amended Complaint

25   alleging that during the period between July 22, 2008, the first day of a regulatory examination

26   of Frontier conducted by the Federal Deposit Insurance Corporation ("FDIC") and Washington's

ORDER
PAGE - 1

1  Department of Financial Institutions ("DFI"), and March 25, 2009, the day that bank regulators

2  issued a Cease and Desist Order ("C&D") concerning certain practices, Defendants made a series

3  of false and misleading statements to investors. The Amended Complaint alleged three

4  categories of misleading statements. First, Defendants issued press releases detailing quarterly

5  earnings that were based on inadequate reserves for loan losses. With more accurate loan loss

6  reserves, the net income per share would have been reduced. Second, Defendants maintained

7  throughout the class period that Frontier was well-capitalized and had strong liquidity, in spite of

8  the fact that bank regulators' investigations had uncovered material deficiencies with respect to

9  both capital and liquidity. Third, Defendants' improper accounting practices overstated

10 Frontier's net income and the value of its assets. Compliance with Generally Accepted

11 Accounting Procedures ("GAAP") and SEC rules would have produced drastically reduced

12 income and earnings per share. Plaintiff bases the bulk of these allegations on findings presented

13 in a report issued in December 2010 by the FDIC's Office of Inspector General ("OIG Report")

14 that outlines the factors that led to Frontier's failure.

15        On December 16, 2010, Defendants moved to dismiss the Amended Complaint on the

16 grounds that the Defendants' statements were not actionable and that Plaintiff had failed to allege

17 a material misrepresentation or omission, had failed to allege scienter with the requisite

18 particularity, had failed to allege loss causation, and had failed to plead an adequate case against

19 the individual Defendants. (Dkt. No. 55.) On September 7, 2011, the Court issued an order

20 finding that Plaintiff had plausibly alleged that Defendants' statements were misleading and that

21 the statements had caused Plaintiff's loss. (Dkt. No. 68.)

22        With respect to scienter, however, the Court identified a series of deficiencies in

23 Plaintiff's allegations and withheld a decision in order to give Plaintiff an opportunity to amend

24 his complaint. On October 14, 2011, Plaintiff submitted his First Amended Complaint ("FAC"),

25 which contained new details and allegations. Defendants again move to dismiss pursuant to

26 FRCP 12(b)(6), arguing that the amendments are not enough to rescue the FAC.

1   **II.     APPLICABLE LAW**

2          Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain

3   statement of the claim showing that the pleader is entitled to relief." The pleading standard Rule

4   8 announces does not require "detailed factual allegations," but it demands more than an

5   unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, --- U.S. ---, 129

6   S. Ct. 1937, 1949 (2009). A pleading that offers "labels and conclusions" or "a formulaic

7   recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

8   544, 555 (2007). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of

9   "further factual enhancement." *Id.*, at 557. "To survive a motion to dismiss, a complaint must

10  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

11  face.'" *Iqbal*, 129 S. Ct. at 1949. In reviewing a defendant's motion, then, the court accepts all

12  factual allegations in the complaint as true and draws all reasonable inferences from those facts

13  in favor of the plaintiff. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). Although Rule

14  12(b)(6) does not require courts to assess the probability that a plaintiff will eventually prevail,

15  the allegations made in the complaint must cross "the line between possibility and plausibility of

16  entitlement to relief." *Iqbal*, 129 S. Ct. at 1949.

17         To state a claim for securities fraud under Section 10(b) of the Exchange Act, 15 U.S.C. §

18  78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5(b), a plaintiff must plead six elements: (1) a

19  material misrepresentation or omission; (2) scienter; (3) a connection between the

20  misrepresentation or omission and purchase or sale of a security; (4) reliance; (5) economic loss;

21  and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148,

22  156 (2008). The Private Securities Litigation Reform Act ("PSLRA") creates a heightened

23  standard for the scienter requirement. A plaintiff must "state with particularity facts giving rise to

24  a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u-4(b)(1).

25  In this circuit, the required state of mind is one of "deliberate or conscious recklessness." *In Re*

26  *Silicon Graphics Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999). Recklessness is defined as:

a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Silicon Graphics*, 183 F.3d at 992. n6. The Supreme Court has clarified that courts are not to examine individual allegations in isolation, but rather to assess all allegations holistically and ask the question: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference? *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007).

A complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements. First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (citing *In re Daou Sys.*, 411 F.3d 1006, 1015–1016 (9th Cir. 2005)). Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter. *Id.* The Court's determination involves an evaluation of the "level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia." *Daou*, 411 F.3d at 1015.

## III.   DISCUSSION

Large parts of Defendants' motion to dismiss are devoted to relitigating matters that were decided in the Court's September 7 order. The Court will not revisit them here, for even if the FAC supersedes the original complaint, the issues remain the same and the Court's decisions are now the law of the case. *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 786–787 (9th Cir. 2000) ("Under the doctrine of law of the case, a court is generally precluded from reconsidering an issue that has already been decided by the same

court"). Rather, this order will confine its analysis to allegations of scienter.

In the Court's September 7 order, it made preliminary observations and inferences about scienter. The Court held that it was appropriate for Plaintiff to attempt to draw an inference of scienter from both the OIG Report and from alleged violations of GAAP. (Dkt. No. 68 at 11–13.) The Court also noted a part of the OIG Report in which bank regulators observed that risk management processes recommended to Frontier in March 2008 had not been implemented by July 2008 and drew the preliminary inference that Frontier management had been aware of certain problems but not acted to correct them. (*Id.* at 13.) Taken holistically, however, these sources were not enough to infer scienter at a level that would have met the PSLRA's requirements. In particular, the Court took issue with a pattern of unsubstantiated allegations indirectly linked to statements from confidential witnesses ("CW1," "CW2," etc.). (*Id.* at 13–16.) Having now reviewed the amended statements from confidential witnesses, the balance of the complaint, and Plaintiff's briefing on the issue of scienter, the Court concludes that Plaintiff has fallen short. While certain allegations create an inference that Defendants were aware of some problematic practices, the inference that Defendants made false statements with the required state of mind is not strong. There are brushstrokes, but no recognizable portrait emerges.

### A. Plaintiff Fails to Show that Defendants' Actions were Highly Unreasonable

A powerful way to establish scienter is to make allegations of specific statements or actions of a defendant that demonstrate highly unreasonable conduct. For example, in *In re Daou Sys.*, the court found a sufficient inference of scienter where the plaintiffs had alleged that top executives personally directed violations of the company's stated accounting policy and GAAP in order to artificially inflate revenues. 411 F.3d 1006, 1023 (9th Cir. 2005). Here, too, Plaintiff seeks to tie Defendants personally to decisions that violated accounting rules. Specifically, Plaintiff alleges that loan loss reserves were based on outdated appraisals and that as members of the Asset Liability Committee, Defendants Dickson, Fahey, Wheeler, and Robinson were directly involved in determining these misleading reserves.

1       But the flaw in Plaintiff's argument is that he fails to establish the same level of

2  wrongdoing that the *Daou* plaintiffs demonstrated. In an attempt to show that Defendants'

3  actions were highly unreasonable, Plaintiff relies on CW6, a Senior Internal Auditor at Frontier

4  during the Class Period. [1] CW6 reported that loan loss reserves were being calculated by using

5  the fair market value of old loan appraisals, and that "the use of old appraisals data would affect

6  the loan loss reserve and therefore called into question the correctness of the reserve number."

7  (Dkt. No. 72 at ¶ 35). In addition, Plaintiff cites to the OIG Report, which states: "Frontier failed

8  to adequately improve the bank's credit risk practices, and many of the weaknesses examiners

9  identified in the 2008 examination can be associated with one or more of the key risk

10  management processes discussed in FIL-22-2008." OIG Report at 8–9. In the Court's prior order,

11  it stated that "the inference suggested by this passage is that Defendants were aware of the

12  problems and did not correct them." (Dkt. No. 68 at 13.)

13       While the Court affirms this conclusion, the inference does not rise to the level of highly

14  unreasonable conduct. The Court cannot conclude that these practices demonstrate an "extreme

15  departure from the standard of ordinary care." *In Re Silicon Graphics Sec. Litig.*, 183 F.3d at

16  976. Telling excerpts from the OIG Report state that the ALLL methodology "needed

17  strengthening" and that Frontier should have been "providing a written justification" for not

18  using current appraised values. OIG Report at 9. It is an unjustifiable leap from saying that a

19  practice needs strengthening or a fuller explanation to concluding that the practice is highly

20  unreasonable or an extreme departure from ordinary care. The FDIC Risk Management Manual

21  of Examination Policies provides that an institution should provide new appraisals "*when there is*

22

---

23      [1] The Court would like to take this opportunity to correct a scrivener's error in the prior order. Discussing

24  the false or misleading nature of the GAAP violations reported by CW6, the Court wrote "The plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. Here, Plaintiff has provided the 'neutral fact' that the appraisals

25  were conducted before 2008, but has not explained whether the conclusion that this practice came from CW6 or elsewhere." (Dkt. No. 68 at 15) (citations omitted). The end of this quotation should have read "but has not

26  explained whether the conclusion that this practice *is false or misleading* came from CW6 or elsewhere." The Court regrets the error.

ORDER
PAGE - 6

1    *a safety and soundness reason for such action,*" and leaves the determination of those reasons to

2    financial institutions. (Dkt. No. 72 at ¶ 37.) Apparently, even the FDIC does not believe that new

3    appraisals are required in every situation.

4            Loan loss reserves are often large numbers. These numbers can be "affected" without

5    becoming misleading. Loan loss reserves are complex numbers. That their correctness can be

6    "called into question" does not imply that it has been refuted. In *Daou*, the defendants manually

7    adjusted figures in violation of their own accounting practices. 411 F.3d at 1023. This is plainly

8    an extreme departure from ordinary care. Here, Defendants used appraisals that even the FDIC

9    acknowledges are not always inappropriate. Taking the allegations in the complaint to be true,

10   the Court accepts that these practices were ultimately false and misleading. But Plaintiff must

11   raise the inference that the errors were not merely the product of simple or inexcusable

12   negligence, but *highly unreasonable*. He has not.

13           **B.  Plaintiff Fails to Infer Scienter from Defendants' Role in Frontier**

14           Plaintiff's next argument is that even if scienter cannot be inferred directly from

15   Defendants' statements and actions, it can be inferred from their role in the company and the

16   magnitude of the allegedly false information. Even where a plaintiff cannot allege personal

17   knowledge of the Defendants' mental state, falsely reported information may itself be indicative

18   of scienter in two situations: (1) where it is combined with "allegations regarding a

19   management's role in the company" that are "particular and suggest that the defendant had actual

20   access to the disputed information," and (2) where "the nature of the relevant fact is of such

21   prominence that it would be 'absurd' to suggest that management was without knowledge of the

22   matter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (citing

23   *South Ferry LP v. Killinger*, 542 F.3d 776, 785–786 (9th Cir. 2008)). These are "narrow"

24   exceptions. *Id.* at 1001.

25           First, Plaintiff argues that allegations about meetings with the FDIC and DFI establish

26   details about Defendants' roles that suggest Defendants had access to information that

1   contradicted their public statements. Defendants cannot claim ignorance of Frontier's failings,

2   Plaintiff alleges, because of the extensive investigation by the FDIC and DFI, which concluded

3   with an exit meeting with Frontier's Board and management in the summer of 2008. CW5,

4   Senior Vice President, Internal Audit, states that he attended an exit meeting and that the entire

5   Board and executive management were present either in person or on the phone. (Dkt. No. 72 at

6   ¶43.) CW5 alleges that at the meeting, DFI personnel discussed Frontier's CAMELS ratings

7   (Capital, Asset Quality, Management, Earnings, Liquidity, and Sensitivity to risk) and that the

8   CAMELS ratings indicated that the Defendants knew about the bank's failings and deteriorating

9   condition. (*Id.*) CW5 also stated that based on matters discussed at the meeting, it "was not hard

10  to figure out what was to come," apparently referring to the C&D. (*Id.*)

11      This is meager stuff. First, Plaintiff is stretching the allegations in the FAC to the

12  breaking point. Plaintiff alleges that Defendants were "expressly told that the Bank was

13  operating with inadequate capital" and that CW5's testimony confirms this. But CW5 testifies to

14  nothing so particular. CW5 merely states that CAMELS ratings were discussed, not that capital

15  was inadequate. CW5 provides the topic of conversation, but none of the necessary particulars.

16  The Ninth Circuit has held bare allegations of this sort to be insufficient. In *in Re Silicon*

17  *Graphics Sec. Litig.*, the plaintiff attempted to infer scienter from reference to analyst reports.

18  The Court held that the pleading was inadequate, noting that a complaint should include specifics

19  from the reports and that in the absence of specifics, it was impossible to determine whether

20  there was any basis for alleging that the corporate officers knew their statements were false. 183

21  F.3d 970, 985 (9th Cir. 1999). The court concluded by stating that it would not speculate as to

22  the content of the reports or the knowledge of the officers. *Id.* And yet speculation is what

23  Plaintiff asks the Court to engage in here. The Court declines.

24      Plaintiff tries to add meat to these bones by pulling substantive conclusions from the

25  2010 OIG Report. The report states that in 2008, Frontier's condition and capital levels were

26  unsatisfactory and the bank was assigned a composite rating of 4 (with 5 being the lowest). But

ORDER
PAGE - 8

1   the OIG Report crucially omits any discussion of what was said to Defendants in 2008. A

2   summary of what went wrong two years after the fact does not raise a strong inference of what

3   Defendants knew at the time. The Court is left with no contemporaneous basis from which it can

4   infer Defendants' knowledge.

5       Even with more detailed accounts of what was said at the meetings, however, allegations

6   of attendance at meetings, without further allegations of the mental state of Defendants, are not

7   enough. In *Daou*, the court found that "general allegations of defendants' 'hands-on'

8   management style, their interaction with other officers and employees, their attendance at

9   meetings, and their receipt of unspecified weekly or monthly reports are insufficient." 411 F.3d

10  at 1022. *Daou* goes on to describe the types of allegations that are sufficient: "specific

11  admissions from top executives that they are involved in every detail of the company and that

12  they monitored portions of the company's database are factors in favor of inferring scienter." *Id.*

13  These are the sorts of allegations that Plaintiff is missing; there is not one specific admission

14  from a top executive anywhere in the complaint. Rather than provide specific admissions,

15  Plaintiff relies on conclusory assertions about corporate knowledge, such as CW5's statements

16  that a discussion "indicated" knowledge or that a particular conclusion "was not hard to figure

17  out." (Dkt. No. 72 at ¶ 43.) These allegations do not suffice to allege scienter. In *Zucco Partners*,

18  the Ninth Circuit held that "generalized claims about corporate knowledge are not sufficient to

19  create a strong inference of scienter, since they fail to establish that the witness reporting them

20  has reliable personal knowledge of the defendants' mental state." 552 F.3d at 998 (holding that

21  statements to the effect that a defendant "had to have known" do not create an inference of

22  scienter).  In conclusion, Plaintiff has failed to show that Defendants' roles suggest any particular

23  knowledge.

24      Second, Plaintiff argues that it is "absurd to suggest" that the Defendants would not have

25  known about the nature and significance of the problems identified by the regulatory

26  investigation. Plaintiff presents a series of cases where the Ninth Circuit has applied such logic,

1   holding that information in question was so fundamental to a defendant's operation that that it

2   would be "patently incredible" to suggest that the board had not discussed those issues. *See e.g.*

3   *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 (9th Cir. Cal. 2008); *No. 84 Employer-*

4   *Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 943 (9th

5   Cir. 2003). There is a fundamental difference in degrees of particularity between those cases and

6   this. In *Am. West*, board members claimed that they had no knowledge of a misleading $100

7   million share repurchasing program or of a wide range of detailed warnings from the FAA,

8   including threats of up to $11 million in penalties. *Id.* at 926–28. Plaintiffs presented evidence of

9   defendants' knowledge of these issues in the form of internal reports, meetings with the FAA

10  (including the contents of the meetings), and letters regarding ongoing problems (including the

11  dates and contents of the letters and to whom they were sent). The court concluded that it was

12  absurd to suggest that a board of directors would not discuss major share initiatives and

13  potentially crippling regulatory penalties. Similarly, in *Berson*, defendants claimed that they had

14  no knowledge of four stop-work orders on important contracts. Plaintiffs provided detailed

15  allegations about the stop-work orders, which: a) halted $10-$15 million of work on the

16  company's largest contract, b) halted $8 million of work after a series of management meetings,

17  c) caused the company to reassign more than fifty employees, and d) required "massive volumes

18  of paperwork" and the demotion of the head of the project involved. 527 F.3d at 988 n.5. The

19  *Berson* plaintiffs alleged that the two defendants were directly responsible for the company's

20  day-to-day operations, and the court determined that the defendants must have therefore been

21  aware of the stop-work orders. In both cases, the plaintiffs alleged not only dramatic problems,

22  but also a basis to believe that defendants were personally aware of the facts underlying those

23  problems.

24          Plaintiff here portrays widespread problems caused by poor quality loans, but offers no

25  reason to infer that Defendants were responsible for reviewing the specifics of each of Frontier's

26  loans. The type of information that the Court could conceivably find that Defendants must have

1   known includes the fact that Frontier was facing a possible rating downgrade, or that market

2   conditions had rendered real estate and construction loans more vulnerable than usual. And if

3   Defendants had made public statements that specifically contradicted those facts, the Court

4   might well infer scienter. But that is not the case. Instead, Plaintiff alleges that Defendants must

5   have known about "poor quality loans" and "the kind and quality of assets held by the Bank" and

6   that taking these factors into account, liquidity and loan reserves were inadequate. (Dkt. No. 72

7   at ¶¶ 63, 66, 68, 72, 75, 77, 84, 87.) Not only does Plaintiff fail to allege that Defendants had

8   direct oversight of the quality of individual loans and assets, but also CW6 alleges that it was he,

9   not senior management, who was responsible for auditing of loan loss reserves. (*Id.* at ¶ 35.) In

10  *Am. West*, the board claimed to have no knowledge of the sorts of high-level corporate strategy

11  that is manifestly the domain of a board of directors. In *Berson*, the defendants' fingerprints were

12  all over the stop-work orders and yet the defendants claimed to have no knowledge of them.

13  Here, Plaintiff has not shown any fingerprints on loans or assets that might indicate that

14  Defendants were familiar with those loans and assets. And if Plaintiff cannot allege with

15  particularity that Defendants were familiar with the quality of Frontier's assets, he cannot allege

16  with particularity that loss reserves and capital levels based on those loans and assets were

17  deliberately or recklessly false or misleading. Ultimately, therefore, he cannot allege scienter and

18  his complaint must be dismissed.

19  **IV.    CONCLUSION**

20      For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 85) is GRANTED.

21  The Clerk is DIRECTED to CLOSE the case.

22      DATED this 20th day of April 2012.

23

24

25

26      John C. Coughenour
        UNITED STATES DISTRICT JUDGE